**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

EARL SCOTT VANDENBOSCH,        )
                               )
            Plaintiff,         )
                               )
                               )  Case No. CIV-20-266-JFH-KEW
                               )
COMMISSIONER OF THE SOCIAL     )
SECURITY ADMINISTRATION,       )
                               )
            Defendant.         )

**REPORT AND RECOMMENDATION**

Plaintiff Earl Scott Vandenbosch (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 46 years old at the time of the ALJ's decision. He has at least a high school education. He alleges an inability to work beginning on June 8, 2012, due to limitations resulting from lower back injury, lower back fusion, right hip arthritis, torn bilateral shoulder rotator cuff, weakness and loss of motion of the right shoulder, and diabetes.

**Procedural History**

On April 9, 2018, Claimant protectively filed an application for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. His application was denied initially and upon reconsideration. On September 20, 2019, ALJ

3

Edward L. Thompson conducted an administrative hearing in Oklahoma City, Oklahoma. Claimant was present and testified. On November 4, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on June 1, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ (1) failed to properly consider, evaluate, and weigh the medical evidence at step two; (2) failed to adequately account for all of Claimant's impairments in the RFC assessment; (3) failed to properly consider and weigh the medical opinions; (4) failed to properly consider the consistency of Claimant's symptoms; and (5) failed to identify jobs available to Claimant at step five.

## Step Two and Four Analysis

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease and osteoporosis in the

left shoulder. (Tr. 18). He determined Claimant could perform sedentary work, except he could frequently reach with his left upper extremity. Claimant could frequently kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. He could occasionally stoop. Claimant had to avoid concentrated exposure to hazards, including dangerous moving machinery and unprotected heights. (Tr. 20-21).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of food and beverage order clerk, charge account clerk, and document specialist, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 28-29). As a result, the ALJ concluded Claimant had not been under a disability from June 8, 2012, through June 30, 2016, the date last insured. (Tr. 29).

Claimant argues that the ALJ erred at step two and step four of the sequential evaluation process by failing to properly consider his osteoarthritis in the left shoulder, chronic pain syndrome, and mild osteoarthritis in the right hip. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28, 1985 WL 56856 (Jan. 1, 1985).

Claimant first argues that the ALJ determined he had a severe impairment of osteoporosis of the left shoulder instead of finding that he had osteoarthritis of the left shoulder. This Court agrees with Defendant that this was merely a scrivener's error and does not require reversal. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (finding "mere scrivener's error" is harmless). When discussing Claimant's severe impairments, the ALJ referenced evidence from the state agency physicians when they determined Claimant's degenerative disc disease and osteoarthrosis were severe impairments (Tr. 133, 135, 148, 152). The ALJ also specifically discussed Claimant's left shoulder impairment in the RFC discussion, including that in May of 2016, an MRI of his left shoulder showed "degenerative changes and moderate hypertrophic AC joint osteoarthritis." (Tr. 24, 741-42).

To the extent Claimant contends the ALJ should have determined his chronic pain syndrome and osteoarthritis of the right hip were severe impairments at step two, where an ALJ finds at least one

6

"severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

The ALJ not only considered Claimant's severe impairments of degenerative disc disease and osteoarthritis of the left shoulder when determining Claimant's RFC, but he also considered Claimant's non-severe impairments, including chronic pain syndrome. Although the ALJ provided an explanation at step two as to why he determined Claimant's chronic pain syndrome was a non-severe impairment (Tr. 18-19), the ALJ still considered the impairment in the RFC discussion with Claimant's other impairments. He considered Claimant's reports of pain (Tr. 21-22) and his treatment for pain throughout the decision. (Tr. 22-27). For example, the ALJ discussed that Claimant's pain was treated with medication after he suffered a slip and fall in June of 2012, and at a follow-up

visit in August of 2012, the recommendation was physical therapy and steroid injections. (Tr. 22, 383-84, 388-94). When Claimant's pain continued, surgery was recommended (Tr. 22, 375), which Claimant underwent in February of 2013. (Tr. 22, 345-46). Claimant continued to experience pain after his surgery, which was treated with medication, therapeutic and home exercises, and other modalities, including pain management, weight reduction, smoking cessation, physical therapy, control over his diabetes, and waiting for a possible spontaneous fusion. (Tr. 23, 398-401, 403-05, 407-09, 578-83, 584-85). Claimant reported being somewhat responsive to injections. (Tr. 23, 419-22).

Claimant underwent surgical fusion of his lumbar spine in May of 2015. (Tr. 23, 431-34). By September of 2015, Claimant was noted to be doing "reasonably well," was to continue with pain management, and aquatic therapy was recommended. (Tr. 23, 439-41). In February of 2016, Claimant reported severe lower back pain, and right hip pain and numbness, but he continued his pain management and physical therapy. (Tr. 23, 450-53). By June of 2016, Claimant had experienced some improvement in his low back pain, but he still experienced pain in his back and shoulder for which he was taking pain medication, and he was in physical therapy for his shoulders. (Tr. 23-24, 458-65).

Moreover, Claimant also asserts that the ALJ mischaracterized his left shoulder osteoarthritis as "mild" instead of "moderate."

A review of the decision, however, reveals that the ALJ characterized Claimant's osteoarthritis in his right hip as "mild" (Tr. 18), but when referring to the osteoarthritis in Claimant's left shoulder, the ALJ only noted that a May 2016 MRI "show[ed] degenerative changes and moderate hypertrophic AC joint osteoarthritis." (Tr. 24).

The Court finds no error in the ALJ's consideration of the evidence of Claimant's chronic pain syndrome or his left shoulder osteoarthritis. He specifically discussed the evidence and indicated that he considered all of Claimant's medically determinable impairments, including those that were non-severe, when assessing Claimant's RFC. He sufficiently accounted for these conditions in the RFC assessment, concluding that Claimant had the RFC to perform sedentary work with additional reaching, postural, and environmental limitations. (Tr. 27).

**Consideration of Medical Opinion Evidence**

Claimant also contends the ALJ failed to properly consider medical opinions from Robert Wienecke, M.D., and J. Arden Blough, M.D. The medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all

9

of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Regarding Dr. Wienecke, Claimant contends the ALJ's evaluation was inconsistent and that he substituted his own opinion for Dr. Wienecke's opinion. The ALJ specifically addressed Dr. Wienecke's opinions in the decision:

> On September 23, 2016, Dr. Robert Wienecke, M.D., gave his medical opinion that the claimant can perform work consistent with the following permanent restrictions: lift, push, and pull ten pounds (Exhibit 2F/70; 4F/8, 20). The undersigned finds this opinion to be persuasive, because it is consistent with his over two years of treatment, including listening to the claimant's subjective complaints as well as identifying the objective medical evidence. Furthermore, Dr. Wienecke's medical opinion is consistent with the evidence that shows the claimant had back pain and pain in his left arm that would limit his ability to lift, push, and pull. However, based upon the medical evidence that showed two back surgeries with ongoing pain, the undersigned finds that the claimant is more limited with regard to postural limitations, reaching, and exposure to environmental hazards.
>
> Additionally, between February 2014 and June 2016, Dr. Wienecke opined that the claimant was "temporarily totally disabled," which is a workers' compensation term[] (Exhibit 2F/4, 7, 12, 14-15, 21, 22, 25, 29, 32, 37, 40, 48, 52, 56, 57, 60, 64, 65, 71-85; 4F; 13F). The undersigned does not find these opinions to be persuasive. First, the statement about the claimant's ability to work refers to an opinion that is reserved for the Commissioner of Social Security. In accordance with 20 CFR 404.1527(d), an opinion on whether an individual is disabled or meets a listing goes to an issue reserved for the Commissioner and therefore cannot be given special significance. Second, Dr. Wienecke's indications that the claimant was temporarily totally disabled is inconsistent with his consistent reports that the claimant was observed to have no motor deficits and that the claimant was able to ambulate without an assistive device throughout the period at issue.

(Tr. 25-26).

Here, the ALJ fully explained why he found Dr. Wienecke's functional limitations persuasive, but he found the determination that Claimant was temporarily totally disabled unpersuasive. Moreover, as noted by the ALJ, such an opinion addresses an issue reserved to the Commissioner, and under the current regulations, the ALJ was not required to provide an analysis of how the evidence was considered. *See* 20 C.F.R. § 404.1520b(c)(3) (noting that statements on issues reserved to the Commissioner, including statements that a claimant is or is not disabled, is evidence that is "inherently neither valuable nor persuasive to the issue of whether [a claimant] [is] disabled . .. [and] we will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c[.]").

Claimant also argues that the ALJ erred by failing to consider the opinion from Dr. Blough, who examined Claimant on January 29, 2018, well after June 30, 2016, the expiration of Claimant's insured status. An ALJ is not required to discuss every piece of evidence in the record. *See generally, Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (finding ALJ is not required to discuss every piece of evidence in the record). He is required to discuss significantly probative evidence. *Id.* Here, Dr. Blough evaluated Claimant to determine if he was permanently totally disabled for workers' compensation purposes. (Tr. 247-51). Although he determined Claimant suffered from additional

12

limitations to those found by the ALJ, there is no indication in Dr. Blough's report that Claimant suffered from the limitations prior to June 30, 2016. In fact, in his discussion of Claimant's limitations, he indicated that "[a]t this time," Claimant is limited in certain activities. (Tr. 250).

Moreover, the ALJ did address three other opinions in the decision from after the date last insured, and he determined that all three opinions were unpersuasive because they had nothing to do with the relevant period of adjudication. (Tr. 27). Claimant does not challenge the ALJ's treatment of these opinions. For these reasons, the Court finds no error by the ALJ for not specifically discussing Dr. Blough's opinion.

**Evaluation of Subjective Complaints**

Claimant next argues that the ALJ failed to conduct a proper evaluation of his subjective statements, including the failure to consider the pertinent factors and to explain how his reported symptoms are inconsistent with the evidence.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific

reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's subjective symptoms, the ALJ noted the two-step process set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 404.1529. (Tr. 21). The ALJ determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 27). In making these determinations, the ALJ summarized Claimant's reports of his symptoms and his testimony at the hearing. (Tr. 21-22). He discussed the medical evidence in detail, including physical findings that were inconsistent with Claimant's reported symptoms, Claimant's treatment history, and his activities of daily living. (Tr. 22-25). The ALJ's evaluation of Claimant's subjective complaints was linked to the evidence and

supported by specific reasons. This Court finds no error in the ALJ's evaluation of Claimant's symptoms.

### Step-Five Determination

Claimant further asserts that the requirements of the jobs the ALJ determined he could perform, *i.e.*, food and beverage order clerk, charge account clerk, and document specialist, exceed his abilities because they involve frequent reaching. This Court, however, has determined that the ALJ appropriately considered Claimant's impairments in the RFC, and the hypothetical questions to the vocational expert included those limitations found to exist by the ALJ. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). The Court therefore finds no error in the ALJ's step-five determination.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and

Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 22nd day of September, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE